**Patsy B. SHELDONE, et al., Plaintiffs,**

v.

**PENNSYLVANIA TURNPIKE COMMISSION,**
**Defendant.**

**No. CIV.A. 99–1650.**

United States District Court,
W.D. Pennsylvania.

July 17, 2000.

Ernest B. Orsatti, Jason Mettley, Jubelirer, Pass & Intrieri, P.C., Pittsburgh, PA, for plaintiffs.

James B. Brown, W. Scott Hardy, Cohen & Grigsby, P.C., Pittsburgh, PA, for defendant.

### ORDER

CAIAZZA, United States Magistrate Judge.

For the reasons stated below, the Defendant Pennsylvania Turnpike Commission's ("the Commission's" or "the Defendant's") motion for a protective order (Doc. 23, hereinafter cited as "Def.'s Mot.") will be granted as consistent with this Order.

### BACKGROUND

*A. Procedural History*

The Plaintiffs, members of International Brotherhood of Teamsters, Local 30 ("Local 30") who are employed by the Commission (hereinafter "the Plaintiffs"), filed this lawsuit on October 7, 1999 alleging that the Defendant violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

("the FLSA"), by "imposing a fluctuating hours method of compensation on the Plaintiffs." *See* Pls.' Mem. in Opp'n to Mot. for Protective Order ("Pls.' Mem.") at 1. On approximately May 24, 2000, Plaintiffs' counsel noticed the deposition of an authorized agent of the Commission pursuant to Federal Rule of Civil Procedure 30(b)(6). *See* Notice of Dep., attached as Ex. A to Def.'s Mot ("Dep.Notice"). Among other things, the Plaintiffs seek to conduct an examination regarding "[t]he mediation [of] the grievance filed by Roger Haas [ ("Mr.Haas") ] and Michael Pandolfo heard on May 21, 1999, before Mediator Michael W. Krchnar, Jr." ("the Mediation"). *See* Dep. Notice at ¶ 2.

The Defendant's motion seeks to preclude the discovery "through any method ..., including [the] Plaintiffs' noticed deposition," of "[a]ll mediation communications and mediation documents...." *See* Def.'s Mot. at ¶ 12 and Wherefore clause. As the basis for its request, the Commission urges this Court to recognize a federal "mediation privilege" precluding discovery of such communications and documents.

### B. *The Mediation*

The Plaintiffs explain that the Mediation constituted the "third step of a grievance procedure under" a "Memorandum of Understanding" between the Commission and Local 30 that "applie[d] to the terms and conditions of" the Plaintiffs' employment. *See* Pls.' Mem. at 4. Their opposition brief alleges Mr. Haas testified at his deposition that one of the Commission's attorneys stated that it "settled out of court" another lawsuit brought by many of the same Plaintiffs here because the Commission "found out it was illegal to pay [them] ... straight time for overtime." *See* Pls.' Mem. at 3 (purportedly *quoting* Dep. Tr.

of R. Haas, not attached as exhibit to Pls.' Mem.).

The Plaintiffs argue that this purported admission is "extremely significant to [their] claims of retaliation" and to the Commission's affirmative defense that it acted with a good faith belief it was not violating the law. *See id.* They also assert the purported admission is highly relevant to their claim that the fluctuating hours method of compensation actually results in "less compensation for overtime hours than under the 'straight time' method" allegedly referenced during the Mediation. *See id.* at 3–4.

### *ANALYSIS*

In asking this Court to recognize a federal mediation privilege, the Defendant correctly identifies Federal Rule of Evidence 501 as authority for the creation of evidentiary privileges under the federal common law. *See* Def.'s Mot. at ¶¶ 5–6. *See generally Pearson v. Miller,* 211 F.3d 57, 65–66 (3d Cir.2000) (*citing* and *quoting* Fed.R.Evid. 501). Rule 501 provides:

> [T]he privilege of a witness, person, government, State, or political subdivision ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

*Id.*[1]

■ The parties agree that the four factors annunciated by the Supreme Court in *Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) provide the standards for determining whether a potential federal evidentiary privilege should be recognized, and this Court joins the other federal courts that have focused on these same standards. *See, e.g., In re Air Crash Near Cali, Colombia on Dec. 20, 1995,* 959 F.Supp. 1529, 1533–34 (S.D.Fla. 1997) (*Jaffee* factors provide "a useful

1. The second clause in Rule 501, which directs that privileges relevant to "element[s] of ... claim[s] or defense[s] as to which State law supplies the rule of decision" are determined by state law, is inapplicable here because the Plaintiffs' claims are asserted under a federal statute. *See* Fed.R.Evid. 501; *see also generally* discussion *supra* at 511–12 (Plaintiffs assert claims under the FLSA).

framework" for analyzing claim of privilege); *Folb v. Motion Picture Indus. Pension & Health Plans,* 16 F.Supp.2d 1164, 1171 (C.D.Cal.1998) (same); *cf. generally Pearson,* 211 F.3d at 66–67 (*quoting* and *citing* general principles annunciated in *Jaffee* ).

The four relevant factors are:

(1) whether the asserted privilege is "rooted in the imperative need for confidence and trust";

(2) whether the privilege would serve public ends;

(3) whether the evidentiary detriment caused by an exercise of the privilege is modest; and

(4) whether denial of the federal privilege would frustrate a parallel privilege adopted by the states.

*See Jaffee,* 518 U.S. at 9–13, 116 S.Ct. 1923.

■■■ Each of these factors weigh in favor of recognizing the mediation privilege in this case.

### 1. The Mediation Privilege Is Rooted in the Imperative Need for Confidence and Trust.

Mediation "is the process in which an independent, impartial, trained, neutral third party, or mediator, facilitates the resolution of a dispute by assisting parties in reaching a voluntary agreement." *See* Sally Ortner, *et al., Alternative Dispute Resolution Column,* 29–JUN Colo Law. 45, 49 (2000); *see also Willis v. Trenton Memorial Ass'n,* 1998 WL 812110, *2 (4th Cir. Sept.22, 1998) ("the stated goal of mediation … is to facilitate and promote conciliation, compromise and the ultimate resolution of a civil action") (unpublished opinion, citation and internal quotations omitted). In a Local Rule addressing court-annexed mediation, this District Court has recognized that the mediation process "afford[s] to litigants an opportunity to articulate their position[s] and to hear, first hand, both their opponent's version of the matters in dispute and a neu-

tral assessment of the relative strengths of the opposing positions." *See* W. Dist. Local R. 16.3.5(A).

Both federal and state courts have recognized that confidentiality is essential to the mediation process. The federal circuit court in *Lake Utopia Paper Ltd. v. Connelly Containers, Inc.,* 608 F.2d 928 (2d Cir.1979) succinctly articulated why confidentiality is necessary:

If participants cannot rely on the confidential treatment of everything that transpires during [mediation] sessions *then counsel of necessity will feel constrained to conduct themselves in a cautious, tightlipped, non-committal manner more suitable to poker players in a high-stakes game than to adversaries attempting to arrive at a just resolution of a civil dispute. This atmosphere* if allowed to exist *would surely destroy the effectiveness of a program which has led to settlements …, thereby expediting cases at a time when … judicial resources … are sorely taxed.*

*Id.* at 930 (emphasis added), *cert. denied,* 444 U.S. 1076, 100 S.Ct. 1023, 62 L.Ed.2d 758 (1980).

The need for confidence and trust in the mediation process is further evidenced by federal statute, the local rules of federal district courts in Pennsylvania and other states, and state statutes from across the country. The Alternative Dispute Resolution Act of 1998, which requires each federal district court to "provide litigants in all civil cases with at least one alternative dispute resolution process, including … mediation," expressly directs the courts to adopt local rules "provid[ing] for the confidentiality of the alternative dispute resolution processes and to prohibit disclosure of confidential dispute resolution communications." *See* 28 U.S.C. § 652(d).

As directed by Congress, the District Courts of Pennsylvania have adopted provisions addressing the confidentiality of mediation communications and documents.

This District's Local Rule, for example, provides:

> *All counsel and parties shall treat as confidential all written and oral communications made in connection with or during any conference* and no such communications may be disclosed to anyone not involved in the litigation. *Nor may any such communication be used for any purpose (including impeachment) in the civil action or in any other proceedings.* Except for a written settlement agreement or any written stipulations executed by the parties or their counsel, *no party or counsel shall be bound by anything done or said at any [mediation] conference[ ].*

See W. Dist. Local R. 16.3.5(E) [2] (emphasis added); *see also* M. Dist. Local R. 16.8.6(c) (mediation "proceeding shall not be used by any adverse party for any reason in the litigation at issue"); E. Dist. Local R. 53.2.1(5)(e) ("nothing communicated during the mediation process[,] including any oral or written statement made by a[n] ... attorney or other participant ... [,] shall be placed in evidence, made known to the trial court or jury, *or construed for any purpose as an admission* ") (emphasis added).

Finally, as noted by another district court that adopted the federal mediation privilege, forty-nine states and the District of Columbia have adopted "a mediation privilege of one type or another." *See Folb*, 16 F.Supp.2d at 1179 (*citing* Pamela A. Kentra, *Hear No Evil, See No Evil, Speak No Evil: the Intolerable Conflict for Attorney–Mediators Between the Duty to Maintain Mediation Confidentiality and the Duty to Report Fellow Attorney Misconduct*, B.Y.U. L.Rev. 715 (1997)).

Based on the foregoing, it is beyond doubt that the mediation privilege is rooted in the imperative need for confidence and trust.

2. *The Mediation Privilege Would Serve the Public Ends of Encouraging Settlement and Reducing Court Dockets.*

As noted above, mediation is intended to facilitate and promote the voluntary conciliation, compromise and resolution of civil actions. *See* discussion *supra* at 513; *see also Folb*, 16 F.Supp.2d at 1176. Absent the mediation privilege, parties and their counsel would be reluctant to lay their cards on the table so that a neutral assessment of the relative strengths and weaknesses of their opposing positions could be made. *See generally* W. Dist. Local R. 16.3.5(A). Assuming they would even agree to participate in the mediation process absent confidentiality,[3] participants would necessarily "feel constrained to conduct themselves in a cautious, tight-lipped, non-committal manner more suitable to poker players in a high-stakes game than to adversaries attempting to arrive at a just resolution of a civil dispute." *Lake Utopia*, 608 F.2d at 930. The effectiveness of mediation would be destroyed, thereby threatening the well established public needs of encouraging settlement and reducing court dockets. *See id.; see also generally Bank of Amer. Nat. Trust & Sav. Ass'n v. Hotel Rittenhouse Assoc.*, 800 F.2d 339, 344 (3d Cir.1986) (acknowledging "the strong public interest in encouraging settlement of private litigation"); *University of Tenn. v. Elliott*, 478 U.S. 788, 798, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) (noting "the public's interest in conserving judicial resources").

---

2. To be sure, this District's Local Rule does not govern the instant motion because the Rule addresses "court-annexed mediation," *i.e.*, mediation ordered by the Court. *See* W. Dist. Local R. 16.3.1, 16.3.3(B). Nevertheless, the District Court's adoption of the confidentiality provisions in Rule 16.3 reveals its recognition of "the imperative need for confi-

dence and trust" in the mediation process. *See* discussion *supra* at 513.

3. "Parties who fear that the results of an unsuccessful mediation attempt will come back to haunt them in a court of law will have little incentive to cooperate and compromise...." *See Willis*, 1998 WL 812110 at *2.

3. *The Evidentiary Detriment Caused by Exercise of the Mediation Privilege is Modest.*

In *Jaffee,* the Supreme Court explained why the psychotherapist-patient privilege it recognized for the first time caused only a modest evidentiary detriment:

> If the privilege were rejected, *confidential conversations between psychotherapists and their patients would surely be chilled,* particularly when it is obvious that the circumstances that give rise to the need for treatment will probably result in litigation. *Without a privilege, much of the desirable evidence to which litigants such as petitioner seek access—for example, admissions against interest by a party—is unlikely to come into being.* This unspoken 'evidence' will therefore serve no greater truth-seeking function than if it had been spoken and privileged.

*Id.,* 518 U.S. at 11–12, 116 S.Ct. 1923 (emphasis added).

This analysis presents the most compelling basis for adopting and applying the mediation privilege in this case. If the Commission had not participated in the Mediation, the admission against interest purportedly made by one of its attorneys would not likely have come into being. This Court sees no reasoned basis for allowing the Plaintiffs to enjoy the benefit of an alleged admission arising through the mediation process when it seems doubtful that such an admission would have otherwise come into existence. *See Jaffee,* 518 U.S. at 11–12, 116 S.Ct. 1923.

The Court notes, though, that the rationale underlying the mediation privilege does not justify precluding the Plaintiffs' discovery of the alleged admission or the facts underlying it independent and outside the scope of the mediation process. *See* Fed.R.Evid. 408 ("This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations."); *see also* Pamela A. Kentra, *Hear No Evil,* B.Y.U. L.Rev. at 735 (not-

ing that certain states' mediation privilege statutes contain an "otherwise discoverable information" exception); *see also, e.g.,* 42 Pa. Cons.Stat. § 5949(b)(4) ("Any document which otherwise exists, or existed independent of the mediation and is not otherwise covered by this section, is not subject to this privilege.").

In any event, a discussion of the Plaintiffs' potential attempts to discover information outside the scope of the Mediation would be premature, as the Defendants have only requested protection of "[a]ll mediation communications and mediation documents...." *See* Def.'s Mot. at ¶ 12 and Wherefore clause.

In sum, the Supreme Court's analysis in *Jaffee* confirms that the evidentiary detriment caused by an exercise of the mediation privilege is modest.

4. *Denial of the Federal Mediation Privilege Would Frustrate a Parallel Privilege Adopted by the States.*

As noted above, nearly all of the states have adopted a mediation privilege. *See* discussion *supra* at 514; *see also* Ex. A to Def.'s Reply Br. (attaching Appendix in *Hear No Evil,* B.Y.U. L.Rev. at 757–75, which contains a chart summarizing mediation privilege statutes for the many states). The states' "promise[s] of confidentiality" regarding mediation "would have little value if the [participants] were aware that the privilege would not be honored in ... federal court." *See Jaffee,* 518 U.S. at 13, 116 S.Ct. 1923. Thus, a "[d]enial of the federal privilege ... would frustrate the purposes of the state legislation that was enacted to foster" confidentiality in the mediation process. *See id.*

Based on the foregoing analysis, this Court concludes that all of the factors in *Jaffee* counsel in favor of recognizing a federal mediation privilege here. Like the psychotherapy-patient privilege adopted in that case, the mediation privilege creates a "public good transcending the normally predominant principle of utilizing all ra-

tional means for ascertaining truth." *See Jaffee*, 518 U.S. at 9, 116 S.Ct. 1923 (citation and internal quotations omitted); *see also Folb*, 16 F.Supp.2d at 1171–79 (holding same).

Nothing in the Plaintiffs' opposition brief demonstrates the contrary. First, for reasons articulated above, their suggestion that "[n]o private interest is furthered" by adopting the privilege is entirely without merit. *See* discussion *supra* at 513-14 (addressing first prong of *Jaffee* regarding need for trust and confidence); *see* Pls.' Mem. at 6–8. Under the first prong in *Jaffee*, Plaintiffs' counsel apparently attempts to distinguish the Mediation from the "normal mediation process," stating that Local 30 "had no recourse" once mediation did not result in a settlement. Aside from the obvious fact that the *Plaintiffs* have enjoyed the recourse of filing a federal lawsuit, Counsel provides no legal authority for the proposition that Local 30's potential rights are in any way relevant to the privilege issue.

Nor can the Plaintiffs support their suggestion that the Mediation was "essentially meaningless" because the Commission was not bound by any findings of the mediator. *See* Pls.' Mem. at 7. By definition, mediation is a non-binding dispute resolution technique through which "a neutral third party ... *facilitates the resolution of a dispute* by assisting parties *in reaching a voluntary agreement.*" *See* discussion *supra* at 513 (emphasis added). The very nature of this process mandates a need for confidence and trust so that the parties can honestly and openly discuss the strengths and weaknesses of their positions in an attempt to reach a voluntarily settlement. The Plaintiffs' "private interest" arguments are of no avail.

So too are their arguments regarding "public interest." *See* Pls.' Mem. at 8–9. Under this prong, the Plaintiffs merely reiterate their claim that the mediation process here was meaningless and they state that the privilege "would only give the [Commission] a license to lie and en-

courage disingenuity." *See id.* The Plaintiffs' sentiments notwithstanding, Congress, the legislatures of nearly every state, and this and other District Courts have recognized the valuable role that mediation plays in our judicial system. *See* discussion *supra* at 513-14. Additionally, this Court fails to see how an adoption of the mediation privilege creates a license for litigants to lie or to be disingenuous. To the contrary, the privilege fosters mediation participants' candor and honesty regarding the validity of their positions by alleviating their "fear[s that] an unsuccessful mediation attempt will come back to haunt them in a court of law." *See* discussion *supra* at 514, n. 3.

Regarding the third prong in *Jaffee*, the Plaintiffs suggest that the Commission's purported admission "would have been spoken with or without a privilege because" the Defendant agreed to participate in the Mediation. *See* Pls.' Mem. at 9. This argument turn's the reasoning in *Jaffee* on its head. The *Jaffee* Court concluded that, if the privilege at issue there "*were rejected,* confidential conversations ... would surely be chilled," thereby making it unlikely for "admissions against interest by a party" like the purported one here "to come into being." *See id.,* 518 U.S. at 11–12, 116 S.Ct. 1923. This is the appropriate analysis, and it demonstrates precisely why the Plaintiffs should not be afforded the benefit of the purported admission.

Regarding the fourth prong in *Jaffee*, the Plaintiffs' arguments simply cannot explain away the nearly unanimous voices of state legislatures from across the country adopting mediation privileges. *See* discussion *supra* at 514–15 (addressing frustration of parallel states' privilege).

The only other argument the Plaintiffs present in opposing an application of the mediation privilege is their contention that the Commission "waived the privilege by putting" mediation communications and documents "at issue" in this case. *See*

Pl.'s Mem. at 10–11. A review of the record, however, reveals the contrary. The mediation issue arose only after Mr. Haas and an agent of Local 30 referenced it in their depositions. *See* Pls.' Mem. at 2–3 (*quoting* Dep. Test. of R. Haas); *id.* at 11 (*referencing* Dep. Test. of A. Lombardozzi, agent for Local 30). The Plaintiffs have not and cannot support their assertion that discussions in depositions of the Mediation by them or agents of Local 30 somehow effectuated a waiver of the privilege on behalf of the Commission.[4]

Having concluded that the federal mediation privilege will be adopted and applied in this case the Court must, to the extent possible, define the contours of the privilege. *Cf. generally Folb,* 16 F.Supp.2d at 1180 (noting same). Because this District's Local Rule 16.3 addresses standards regarding the appropriate scope of confidentiality in the mediation process (albeit, within the context of court-annexed mediation), the Court concludes that the Rule is an appropriate starting point for defining the privilege. Accordingly, the mediation privilege recognized herein shall comport with the following standards:

- The privilege protects from disclosure "all written and oral communications made in connection with or during" a mediation conducted before a "neutral" mediator. *See* W. Dist. Local R. 16.3.5(E), 16.3.1.
- No such written or oral communication may be "used for any purpose (including impeachment) in the civil action or in any other proceedings." *See id.,* R. 16.3.5(E).
- "Except for a written settlement agreement or any written stipulations

executed by the parties or their counsel, no party or counsel shall be bound by anything done or said" during the mediation process. *See id.*

In addition, this Court has already concluded that the most compelling reason for recognizing the mediation privilege is the Plaintiffs' lack of entitlement to any admission of the Defendant that, but for the mediation process, would not have come into being. *See* discussion *supra* at 515 (*citing* and *quoting Jaffee,* 518 U.S. at 11–12, 116 S.Ct. 1923). If the Plaintiff is able to elicit any admissions (or facts underlying them) outside the scope of the mediation process, however, the rationale for the privilege would no longer apply. Accordingly, this Court concludes and therefore holds that the mediation privilege does not protect from disclosure "any evidence otherwise" and independently "discoverable merely because it [wa]s presented in the course of" the Mediation. *See generally* Fed.R.Evid. 408; *see also* discussion *supra* at 515. Accordingly, the Plaintiffs remain free to conduct discovery independent of, and unrelated to, the mediation process.[5]

Finally, the Court notes that the elements listed above are by no means intended to be an exhaustive recitation of the standards governing the mediation privilege. Numerous court and legislatures have recognized exceptions and/or limitations to the privilege not implicated in this case. *See, e.g.,* 42 Pa. Cons.Stat. § 5949(b)(1), (b)(2) (stating exceptions to mediation privilege with respect to legal, binding settlement agreements and evidence relevant to criminal matters). These issues must be saved for another

---

4. Nor have the Plaintiffs demonstrated that Defense counsel's following up on Mr. Haas' references to the Mediation in his deposition, without immediately asserting the mediation privilege, renders the instant motion untimely or otherwise inappropriate. *See id.* at 11. Finally, this magistrate judge fails to see how the Defendant's assertion of the affirmative defense that it acted on a good faith belief that its conduct was lawful constitutes a waiver of the mediation privilege. *Cf. generally*

*United States v. Liebman,* 742 F.2d 807, 811 n. 4 (3d Cir.1984) (refusing to find waiver of privilege "on a speculative basis").

5. Should the Plaintiffs seek to engage in such discovery, the Defendant remains entitled to assert any other privilege that may independently protect from disclosure the information sought.

day. *See generally Trammel v. United States,* 445 U.S. 40, 47, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980) (purpose of Federal Rule 501 "was to provide the courts with the flexibility to develop rules of privilege on a case-by-case basis, ... and to leave the door open to change") (citations and internal quotations omitted).

*CONCLUSION*

For the foregoing reasons, the Defendants' motion for a protective order is granted consistent with the reasoning in this Order.