# Aetna Inc. v. Lexington Insurance Company

20

*Ann M. Laupheimer,* for plaintiff.
*Jeffrey R. Lerman,* for defendants.

SHEPPARD JR., *J.,* October 27, 2005—This opinion is submitted relative to the appeal of plaintiff, Aetna Incorporated of this court's order of September 9, 2005, denying plaintiff's motion to enforce settlement and granting the motion to enforce settlement of Lexington Insurance Company and National Union Fire Insurance Company of Pittsburgh, Pa., defendants.[1]

---

1. This order further provided that "[t]he settlement between Aetna and Lexington does not include the release of any of Lexington's reinsurers, including ARIC, on the $30 million Lexington insurance policy at issue" and that Lexington shall pay the second installment payment ($2,227,500 plus accrued interest) pursuant to the settlement agreement "following the passage of all applicable periods for appeal of any and all present and future orders relating to the enforcement of the settlement of this action without any appeal being taken or, in the event of an appeal, upon any and all present and future orders becoming final and conclusive upon the exhaustion of all rights to appeal."

For the reasons discussed, this court respectfully submits that its order should be affirmed.

## BACKGROUND

This is an insurance coverage action relating to litigation in the United States District Court for the Southern District of Texas against an insured subsidiary of Aetna.[2] The parties to that case, at the conclusion of the trial, settled for a payment by Aetna of $8.25 million. Aetna asserts that it expended an additional $10.2 million in attorney's fees in the defense of that matter.

Subsequently, Aetna filed this insurance coverage action seeking reimbursement of the $8.25 million settlement and $7.2 million representing its defense costs minus a $3 million self-insured retention. Aetna, in its complaint, identified ARIC as a "captive reinsurer" through which Aetna funded a self-insured retention in the amount of $3 million per claim.

Following a two-day mediation presided over by the Honorable Abraham J. Gafni of ADR Options, a settlement agreement was reached. According to that settlement agreement, defendants were to pay plaintiff $4,455,000 in two equal payments of $2,227,500 on or before June 10, 2005 and July 11, 2005, respectively. Counsel for plaintiff informed this court by letter of May 10, 2005, that "the parties have agreed to a settlement of the above-captioned matter." Lexington's petition to enforce settlement, exhibit. "1." Plaintiff also sent defendants' counsel a letter on the same date stating that: "[a]s

---

2. That suit, *Adminstaff v. Aetna Life Insurance Co.,* is referred to in this opinion as the "Adminstaff litigation."

we discussed on the telephone, our clients have agreed to a settlement of this litigation for a payment by the defendants to an entity to be designated by Aetna in the amount of $4,455,000." *Id.,* exhibit "2."

After the first payment was made, an Aetna representative not involved in the ADR Options mediation informed Lexington that the settlement called not only for the payment of $4,455,000, but also a relinquishment by defendants of claims for reinsurance against an Aetna affiliate, ARIC, on a $30,000,000 "at risk" policy. (This relinquishment amounts to approximately $1.2 million.) As a result, defendants expressed surprise and disagreement and did *not* pay the requisite second installment, instead placing the $2,227,500 in escrow.

Both parties then filed petitions to enforce the settlement.

Defendants' petition to enforce settlement requested that this court enter an order: (1) enforcing a settlement which calls for defendants to pay plaintiff $4,455,000 in full consideration of the release of its claims in this litigation; (2) determining that the settlement did not provide for the release of ARIC's obligations to defendants in its capacity as reinsurer on the $30 million "at risk" policy; (3) providing that defendants pay Aetna the unpaid installment of $2,227,500 plus interest accrued on that amount; and (4) awarding legal fees and costs as sanctions for Aetna's alleged "vexatious" conduct in this matter.

Plaintiff's petition to enforce the settlement asked this court to enter an order compelling defendants to pay the second installment of $2,227,500 plus interest at the rate of 6.25 percent and $2,260 in attorney's fees. In addi-

tion, plaintiff took the position that defendants were attempting to ignore the provision of the settlement agreement which, according to plaintiff, calls for the release of ARIC's obligations in its capacity as reinsurer on the $30 million "at risk" policy.

The court granted defendants' petition to enforce settlement, in part, and denied plaintiff's petition to enforce settlement.

The plaintiff has now appealed.

## DISCUSSION

### I. *The Release at Issue Must Be Strictly Construed in Light of the Circumstances at the Time of Its Execution and Implicates Only Those Claims Within the Contemplation of the Parties*

"The courts of Pennsylvania have traditionally determined the effect of a release using the ordinary meaning of its language and interpreted the release as *covering only such matters as can fairly be said to have been within the contemplation of the parties when the release was given.*" *Vaughn v. Didizian,* 436 Pa. Super. 436, 439, 648 A.2d 38, 40 (1994). (citations and quotation marks omitted) (emphasis added) Moreover, "releases are strictly construed so as not to bar the enforcement of a claim which had not accrued at the date of the execution of the release." *Id.,* citing *Restifo v. McDonald,* 426 Pa. 5, 230 A.2d 199 (1967). Claims that have not accrued will not have been within the contemplation of the parties. The basic reasoning behind the rule is "that it would be unfair for a release to bar claims that could not possibly have been contemplated or foreseen by the parties." *Transportation Insurance Co. v. Spring-Del Associates,*

24

159 F. Supp. 2d 836, 841 (E.D. Pa. 2001), citing *Restifo,* 230 A.2d at 210.

The provision of the settlement agreement at issue provides:

"Lexington and National Union . . . , do hereby release and forever discharge Aetna and its predecessors . . . from and against any and all claims, demands, debts, liabilities . . . and causes of action whatsoever (including any purported claims for reinsurance or additional premium or payment of any type from the Aetna releasors, including ARIC) . . . ." Settlement agreement, ¶3.

The settlement agreement does not specify whether ARIC is released in its capacity as a "captive reinsurer" of Aetna's self-insured $3 million per claim retention, or in its capacity as reinsurer on the $30 million "at risk" policy. However, plaintiff asserts that there is no ambiguity with regard to ARIC. Aetna Inc.'s response to Lexington's petition to enforce settlement, ¶14. Plaintiff argues that the characterization of ARIC as the "captive reinsurer" in its own complaint is irrelevant. *Id.* This court disagrees.

In *Vaughn,* the Pennsylvania Superior Court was critical of the lower court's decision which failed to consider what matters were within the parties' contemplation when reviewing the language of the release. The court stated:

"In construing [a] general release, a court cannot merely read the instrument. Instead, it is *crucial that a court interpret a release so as to discharge only those rights intended to be relinquished.* The intent of the parties must be sought from a reading of the entire instrument, *as well as from the surrounding conditions and*

*circumstances." Vaughn,* 436 Pa. Super. at 439, 648 A.2d at 40. (emphasis added)

The manner with which plaintiff identified ARIC in its own complaint—as the "captive reinsurer" through which Aetna funded the self-insured retention amount of $3 million per claim[3]—sheds light on the intent of the parties. This is particularly true when considered in the context of Judge Gafni's starting point of damage amounts as set out in the settlement agreement. The settlement agreement provides in part:

"Whereas, Aetna's damages in the litigation were later alleged to total approximately $15.45 million, which amount represents approximately $10.2 million in attorneys' fees and other costs that Aetna incurred in litigating the Adminstaff action, plus Aetna's $8.25 [million] settlement payment to Adminstaff, and *less Aetna's $3 million self-insured retention; . . . ."* (emphasis added)

Furthermore, counsel for Aetna, wrote to this court on May 10, 2005, advising that the parties had settled the case. On the same date he wrote to defense counsel, "Our clients have agreed to a settlement of this litigation for a payment by the defendants to an entity designated by Aetna in the amount of $4,450,000."[4] Lexington's petition to enforce settlement, exhibits "1" and "2." Significantly, both of these letters, which presumably show Aetna's intent with regard to settlement, are devoid of any mention of the release of ARIC in its capacity as a reinsurer on the $30 million "at risk" policy.

As to the issue whether the claim (related to ARIC in its capacity as the reinsurer on the "at risk" policy) had

3. Complaint, ¶13.
4. The correct amount is $4,455,000.

accrued as of the date of the execution of the release, keep in mind that at the time of the mediation neither ARIC nor any other reinsurer had an obligation in connection with settlement. Such obligation would accrue only after a settlement payment was made. The first installment of the settlement was paid to Aetna two days after the settlement agreement became effective. Therefore, a claim involving ARIC as the reinsurer on the "at risk" policy had not accrued as of the date of the execution of the settlement agreement. The case law on this issue specifically instructs that "releases are strictly construed so as not to bar the enforcement of a claim which had *not accrued at the date of the execution of the release.*" *Vaughn,* 436 Pa. Super. at 439, 648 A.2d at 40. Thus, it is submitted that it would not have been the intent of the parties to release ARIC in its capacity as the reinsurer on the "at risk" policy.

Accordingly, this court finds that the settlement agreement does not release ARIC in its capacity as the reinsurer on the "at risk" $30 million policy.

II. *The Confidentiality Provision of the ADR Agreement and the Pennsylvania Statute Guaranteeing the Confidentiality of Mediation Does Not Bar This Court's Consideration of What Was* Not *Discussed by the Parties During the Settlement Process*

Plaintiff urges that defendants have violated the ADR Options agreement with the mediator and Aetna, specifically the following:

"The fact of this proceeding, *and all disclosures made in connection therewith, as well as all negotiations and/*

*or results relating thereto,* are confidential settlement negotiations with the meaning of all applicable rules, statutes, and regulations." (emphasis added)

Plaintiff argues that defendants have attempted to flout the Pennsylvania statute guaranteeing the confidentiality of mediations. The pertinent Pennsylvania Statute, 42 Pa.C.S. §5949, states: "*Mediation communications* . . . shall not be admissible as evidence in any action or proceeding including but not limited to a judicial . . . proceeding." (emphasis added)

This court submits that the ADR proceeding cannot be ignored given that the settlement agreement that resulted is the contract at issue here. The court need not consider the communications or disclosures made during the course of the mediation process. The fact of *what was not discussed,* in and of itself, evidences the fact that the parties did not intend to release ARIC in its capacity as the reinsurer on the "at risk" policy. The statute and the confidentiality provision of the ADR Options agreement do not bar this court's consideration of what facts or positions were *not* disclosed or negotiated.

Since Lexington's potential claim against ARIC as the reinsurer on the $30 million "at risk" policy had not accrued during the ADR Options mediation process, Lexington's reinsurance claim against ARIC was *not* then in dispute. The parties did not discuss the release of Lexington's reinsurance claim against ARIC either before or after the settlement was achieved at the mediation. Further, as noted, the two May 10, 2005 letters (to defense counsel and this court) make no mention of a release covering ARIC in its capacity of the reinsurer on the "at risk" policy.

Finally, even if this court were to consider communications related to the mediation in order to ascertain the parties' intent with regard to the settlement agreement, the purpose of the Pennsylvania statute would not be defeated. The court in *United States Fidelity and Guaranty Company v. Bilt-Rite Contractors Inc.,* an Eastern District of Pennsylvania case applying Pennsylvania law, set out the purpose of the mediation privilege, thusly:

"If participants cannot rely on the confidential treatment of everything that transpires during [mediation] sessions then counsel of necessity will feel constrained to conduct themselves in a cautious, tightlipped, noncommittal manner more suitable to poker players in a high-stakes game than to adversaries *attempting to arrive at a just resolution of a civil dispute.* This atmosphere if allowed to exist would surely destroy the effectiveness of a program which has led to settlements . . . , thereby expediting cases at a time when . . . judicial resources . . . are sorely taxed." 2005 U.S. Dist. Lexis 9299, \*18 (E.D. Pa. 2005), citing *Lake Utopia Paper Ltd. v. Connelly Containers Inc.,* 608 F.2d 928, 930 (2d Cir. 1979), quoted in *Sheldon v. Pa. Tpk. Comm'n,* 104 F. Supp.2d 511, 513 (W.D. Pa. 2000). (emphasis added)

This court submits that this reasoning makes clear that evidence related to settlement negotiations is inadmissible in connection with the prosecution and trial of the underlying claim. However, this court was not asked to decide the issues related to the underlying case. Instead, this court was charged with interpreting the settlement agreement. The court agrees with the conclusion set out in *Bank of America National Trust and Savings Association v. Hotel Rittenhouse Associates,* 800 F.2d 339, 345 (3d Cir. 1986), "Having undertaken to utilize the judi-

cial process to interpret the settlement and to enforce it, the parties are no longer entitled to invoke the confidentiality ordinarily accorded settlement agreements."

In sum, then, this court finds that the confidentiality of the mediation process, as set out in 42 Pa.C.S. §5949, was not violated by defendants or this court in reaching a decision here.

### III. *Plaintiff Is Not Entitled to Damages for Defendants' Alleged Bad Faith Conduct or to Sanctions Under Pa.R.C.P. 229.1*

Plaintiff contends that it is entitled to punitive damages and reimbursement of the court costs and attorneys' fees incurred in litigating this issue. This claim is based upon 42 Pa.C.S. §8371 which provides in pertinent part:

"In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may . . .

"(2) Award punitive damages against the insurer.

"(3) Assess court costs and attorney fees against the insurer."

Success in bringing a claim of bad faith requires the insured to present clear and convincing evidence that "the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." *MGA Inc. Co. v. Bakos,* 699 A.2d 751, 754 (Pa. Super. 1997). Though left undefined by the statute, the Pennsylvania Superior Court has recognized that "bad faith" has a particular meaning in the insurance context:

"*Insurance.* 'Bad faith' on [the] part of [an] insurer is any *frivolous or unfounded refusal to pay proceeds of a policy;* . . . For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.,* good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." *Id.* citing *Terletsky v. Prudential Property and Casualty Insurance Co.,* 437 Pa. Super. 108, 124-25, 649 A.2d 680, 688. (emphasis added)

Plaintiff argues that it is entitled to bad faith damages because defendants failed to comply with their obligation to make the second installment payment pursuant to the settlement agreement, "nor have defendants articulated any reason for failing to [make] the payment when due." Aetna's motion to enforce settlement agreement, ¶8. This argument is not persuasive. Plaintiff attached to its motion to enforce settlement correspondence dated July 7, 2005 from counsel for defendants to Judge Gafni with copies to plaintiff's counsel, stating that the relinquishment by defendants of claims for reinsurance against an Aetna affiliate on the $30 million policy was not contemplated during the mediation process and that, unless plaintiff changed their position, there would be further legal proceedings. Moreover, plaintiff's counsel also attached to its motion to enforce settlement agreement correspondence dated July 12, 2005, from defense counsel to this court, with copies sent to plaintiffs' counsel, which advised:

"As Mr. Richter has been advised, as a result of Aetna's repudiation of the essence of the agreement that it reached before Judge Gafni to accept $4,455,000 in full consideration of the release of its claims in this litigation, *de-*

*fendants are arranging to escrow the second installment in an interest bearing account until this matter is resolved.*" Aetna's motion to enforce settlement, exhibits 3, 5. (emphasis added)

This court finds that defendants had a legitimate disagreement with plaintiff's construction of the settlement agreement. Thus, the defendants' refusal to pay the second installment under the settlement agreement was neither frivolous nor unfounded.

The plaintiff also argues that it is entitled to damages pursuant to 42 Pa.C.S. §8371 because defendants allegedly made "libelous accusations against its insured, which allegations [were] made solely for defendants' own business purposes." The statement at issue is defendant's assertion to this court that plaintiff's contention—that the settlement agreement includes the release of obligations of ARIC in its capacity as the reinsurer on the $30 million "at risk" policy—"would be an attempt to perpetrate a fraud on this court." Aetna's motion to enforce settlement, exhibits "5" and "6." Plaintiff asserts that this statement amounts to a violation of common law and statutory obligations of defendants to treat their insured (plaintiff) "in a good faith manner at all times." The court rejects this position.

As noted, our Superior Court's definition of "bad faith" under 42 Pa.C.S. §8371 provides: "'Bad faith' on [the] part of [an] insurer is any *frivolous or unfounded refusal to pay proceeds of a policy;* . . . ." *MGA Inc. Co.,* 699 A.2d at 754. The statement that plaintiff asserts constitutes bad faith has nothing to do with a refusal to pay the proceeds of a policy. Instead, defendants' assertions were simply defendants' position with regard to plaintiff's interpretation of the settlement agreement. Accordingly,

this court finds that defendants' statements do not fit within the definition of bad faith.

Plaintiff also complains that "Aetna's insurers hurled invective of the most obnoxious kind against Aetna, all for defendants' own purposes." This "invective" includes statements such as: (1) "Aetna's conduct in this matter is reprehensible"; (2) Aetna is trying to "make a mockery of the process of mediation"; and (3) Aetna is engaged in "deliberate and faithless overreaching." These statements are also unrelated to defendants' refusal to pay the second installment payment set out in the settlement agreement. Similarly, then, these statements do not constitute bad faith.

As to the imposition of sanctions under Pennsylvania Rule of Civil Procedure 229.1, a prerequisite to the imposition of sanctions for failure to deliver settlement funds is a finding that "there is no material dispute as to the terms of the settlement or release." Pa.R.C.P. 229.1(g). The scope of the release, specifically whether the release includes a relinquishment of defendants' rights against ARIC in its capacity as the reinsurer on the $30 million policy, is the precise issue of this dispute.

Additionally, the sanction for failure to deliver settlement funds is the imposition of interest on the funds "running from the twenty-first day to the date of delivery of the settlement funds." Pa.R.C.P. 229.1(g). Here, because Lexington has placed the second settlement installment into an interest bearing escrow account, the court need not consider the imposition of interest as a sanction.

In sum, then, this court denies plaintiff's claims for sanctions and bad faith damages.

## IV. *Lexington's Claim for an Award of Attorneys' Fees Under 42 Pa.C.S. §2503 Is Denied*

Lexington asserts that it is entitled to an award of attorneys' fees under 42 Pa.C.S. §§2503(7) and (9) because plaintiff had "no reasonable basis" to argue an entitlement to an additional $1.2 million settlement benefit. This court disagrees and denies this claim.

42 Pa.C.S. §2503, titled "Right of participants to receive counsel fees," provides in part:

"The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter: . . .

"(7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter. . . .

"(9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith."

While this court does not agree with Aetna's construction of the settlement agreement, this court does *not* find that Aetna's belief that the settlement agreement included a release of ARIC as the reinsurer on the "at risk" policy was baseless. Despite the fact that the settlement agreement specifically named ARIC, it does not specify in which capacity ARIC was to be released. Therefore, this court finds that plaintiff's conduct in filing its petition to enforce settlement was not "arbitrary, vexatious or in bad faith." Likewise, this court finds that plaintiff did not participate in "dilatory, obdurate or vexatious conduct" during the pendency of this matter.

34

Accordingly, this court denied Lexington's claim for attorneys' fees under 42 Pa.C.S. §2503.

## CONCLUSION

For the reasons discussed, this court respectfully submits that its order of September 9, 2005, should be affirmed.

