In re RDM SPORTS GROUP, INC.; RDM Holdings, Inc.; Sports Group, Inc.; Diversified Products Corporation; Willow Hosiery Company, Inc.; Hutch Sports USA, Inc.; Diversified Trucking Corp.; International Sports and Fitness, Inc.; and T.Q., Inc., Debtors.

William G. Hays, Jr., as Liquidating Agent, f/k/a Chapter 11 Trustee, for RDM Sports Group, Inc. and Related Debtors, Plaintiff,

v.

Equitex, Inc.; Smith Gambrell, Russell, L.L.P.; David J. Harris, P.C.; and David J. Harris, individually, Defendants.

Bankruptcy Nos. 97–12788–WHD to 97–12796–WHD.
Adversary No. 00–1065.

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

April 2, 2002.

James C. Cifelli, Lamberth, Bonapfel, Cifelli & Stokes, Atlanta, GA, Leo R. Beus, Beus Gilbert, PLLC, Phoenix, AZ, for plaintiff.

Grant T. Stein, Rebecca M. Lamberth, Alston & Bird, LLP, Atlanta, GA, for Smith, Gambrell & Russell, L.L.P., David J. Harris, P.C., David J. Harris, individually.

### *ORDER*

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Before the Court is the Motion to Compel filed by Smith, Gambrell & Russell L.P., David Harris P.C., and David Harris (hereinafter the "SGR Defendants") in the above-captioned adversary proceeding. The plaintiff, William G. Hays, Jr. (hereinafter the "Plaintiff"), in his capacity as Liquidating Agent for the consolidated bankruptcy estates of RDM Sports Group, Inc., et al. (hereinafter the "Debtors"), opposes the SGR Defendants' motion. Also before the Court are the Motions for Protective Order, filed by Arthur Andersen

(hereinafter "Andersen") and General Electric (hereinafter "GE"), which have been joined by the Plaintiff.

### BACKGROUND

In August 2000, the Plaintiff initiated the instant adversary proceeding by filing a complaint against the SGR Defendants. The complaint seeks damages for breach of fiduciary duty, legal malpractice and negligence, civil conspiracy/acting in concert with others, and the receipt of preferential payments.[1] Essentially, the Plaintiff alleges that the SGR Defendants should be held liable for actual and punitive damages for their role in causing the Debtors' financial demise.

The Plaintiff filed a lawsuit against GE for damages resulting from allegedly defective motors, which were sold to the Debtors by GE and were placed in certain treadmills manufactured and sold by the Debtors. The Plaintiff hired special counsel to litigate the case. At some point during the litigation of the GE matter, the parties agreed to mediate their dispute with a third-party, neutral mediator, which eventually resulted in their reaching a settlement. The Plaintiff also pursued claims against Andersen for damages arising from the accounting and auditing services provided to the Debtors by Andersen and for the recovery of certain potentially preferential transfers. The Plaintiff did not file a lawsuit against Andersen, but the parties worked toward settlement of the dispute and eventually entered mediation. Both the GE mediation and the Andersen mediation were conducted under the rules and terms of the American Arbitration Association. Prior to entering the mediation, all parties agreed to maintain the confidentiality of the mediation discus-

---

1. Equitex, Inc. is also a named defendant in this action, but it is not a party to these Motions.

sions, including any documents that were generated during the mediation.

The Andersen mediation resulted in a settlement agreement, under which Andersen agreed to pay $18 million. However, the agreement was contingent upon the entry by this Court of an order that would prevent the SGR Defendants and the SGR Defendants' co-defendants (hereinafter collectively referred to as the "Nonsettling Defendants"), from seeking contribution or indemnification from Andersen in the event the Nonsettling Defendants were found liable to the Plaintiff for damages. The Nonsettling Defendants objected to the entry of an injunction against their interests (hereinafter the "Bar Order"). To deal with these objections, the Plaintiff filed an adversary proceeding, in which he asked the Court to grant his request for injunctive relief (hereinafter the "Bar Order Proceeding"). However, the Nonsettling Defendants continued to object to the entry of the Bar Order on the ground that the Bar Order required them to relinquish their rights to pursue Andersen for its share of the damages. The Nonsettling Defendants and the Plaintiff agreed that the Court could not approve the settlement and enter the Bar Order without making a finding that the entry of the Bar Order would be fair to the affected parties. On that ground, the parties agreed that the Bar Order should include a judgment reduction credit provision, which would provide that, in the event the Nonsettling Defendants were determined to be liable for damages, the Nonsettling Defendants would be entitled to a reduction of those damages to account for the fact that the Plaintiff had already recovered a portion of the damages from Andersen. While the parties agreed that a judgment reduction credit was required, they could not agree as to how the credit should be determined. The Plaintiff was willing to give the Nonsettling Defendants a credit that would either be equivalent to the $18 million received from Andersen, or could be based on Andersen's share of the liability, as determined at trial. The Nonsettling Defendants, however, insisted upon a credit that would be equal to the greater of $18 million or an amount based on Andersen's share of the liability.

Since the terms of the settlement agreement between Andersen and the Plaintiff were contingent upon the entry of the Bar Order by a certain date, which was fast approaching at the time the Plaintiff filed the Bar Order Proceeding, the Court approved an expedited trial schedule. This schedule required the Nonsettling Defendants to file an answer and conduct discovery in a very short time. The Nonsettling Defendants served the Plaintiff with five interrogatories and requests for production of documents. These requests sought the production of any and all documents related to the Plaintiff's settlement agreement with Andersen (hereinafter collectively referred to as the "Mediation Documents"). The Plaintiff refused to produce the Mediation Documents, claiming that the documents were protected by a mediation privilege, attorney-client privilege, and the work product doctrine.

After unsuccessfully attempting to resolve the discovery dispute with the Plaintiff, the SGR Defendants filed a motion to compel production. The Court heard oral arguments from the parties' counsel. By the conclusion of the hearing, the parties were largely in agreement that, subject to certain conditions, the Plaintiff would turn over the Mediation Documents, with the exception of certain inflammatory slides used in a presentation during the mediation. The Court then ordered the Plaintiff to turn over all of the documents, with the exception of the inflammatory slides, with the provision that the SGR Defendants could not use the documents for any pur-

pose other than the Bar Order Proceeding. Subsequent to the entry of the Court's Order, but before the Plaintiff produced the documents, the parties settled the Bar Order Proceeding. The Plaintiff agreed to give the Nonsettling Defendants the judgment reduction credit of their choice, and the Nonsettling Defendants dropped their opposition to the entry of the Bar Order. The parties presented a consent order, at which time the Court approved the settlement and granted the requested injunctive relief.

Shortly after the settlement of the Bar Order Proceeding, the SGR Defendants filed a motion to compel in the instant adversary proceeding, in which the SGR Defendants sought the production of the same documents. Following the settlement of the GE litigation, and after the SGR Defendants' motion to compel had been set for a hearing, the SGR Defendants broadened the scope of their discovery to include documents pertaining to the GE mediation. In response, Andersen and GE filed similar motions for protective orders, seeking to maintain the confidentiality of any documents prepared for or during their respective mediations. Immediately prior to the hearing on the motions, the SGR Defendants reached a settlement with GE and Andersen, pursuant to which the SGR Defendants agreed to seek only those documents prepared by the Plaintiff and his counsel for or during the mediation and to not seek any documents prepared by either GE or Andersen. At the hearing, the settling parties presented the Court with consent orders memorializing this agreement, and requested that the Court enter the orders. The Plaintiff opposed the entry of the consent orders; but, since the Court had not had sufficient time to read and consider the orders, the Court declined to enter the orders at that time.

The Court conducted an *in camera* review of the Mediation Documents. The Court understands that within the documents presented for its review are documents that have already been made available to the SGR Defendants, and that these documents were included only to give the Court a complete picture of what was submitted to the mediator. The Plaintiff's brief states that "any documentary evidence used during the negotiation process has already been disclosed and made available to the Defendants." Additionally, many of the documents are matters of public record. Therefore, the Court assumes that most of the documents are not truly at issue.

For purposes of discussion, the documents that are at issue will be divided into broad categories. The first set of documents (Tab C) consists of those materials submitted by the Plaintiff to the mediator during the GE mediation session, specifically the GE Mediation Brief, which is a memorandum of law prepared by the Plaintiff's counsel that evaluates the strengths and weaknesses of the Plaintiff's case against GE. The GE Mediation Brief was created for the purpose of providing information to the mediator and was not shared with GE.

The second set of documents (Tab B–1) consists of those documents submitted by the Plaintiff during the Andersen mediation. Again, the Court notes that some of the Tab B–1 documents provided for its review may have already been disclosed or otherwise made available to the SGR Defendants. Therefore, the Court will focus on the Andersen Mediation Briefs, which include two memoranda of law prepared by the Plaintiff's counsel, one of which was shared with only the mediator, while the other was given to both the mediator and Andersen. The documents found under Tab B–2 are related to the Tab B–1 docu-

ments and consist of copies of slides that were prepared for, and may have been presented by the Plaintiff during, the Andersen mediation.

The documents found under Tab A were previously disclosed to counsel for the SGR Defendants. These documents contain, *inter alia*, a letter written by Andersen's counsel, which was intended to address the Plaintiff's claims in an effort to reach a settlement. The letter is a response to a letter written by Plaintiff's counsel outlining the Plaintiff's case. The remainder of the Tab A documents are various work papers utilized as exhibits to these letters. The Plaintiff has requested that the Court order the SGR Defendants to return these documents to the Plaintiff.

The Court will not address the documents found under Tabs B–3 and B–4, as the SGR Defendants are not seeking disclosure of these documents, as evidenced by the terms of the consent protective order negotiated between the SGR Defendants and GE and Andersen.[2]

### CONCLUSIONS OF LAW

I. *The Standards of Federal Rule of Civil Procedure 26*

Discovery in bankruptcy adversary proceedings is governed by the Federal Rules of Civil Procedure. *See* FED.R.BANKR.P. 7026–7037. Applicable to this controversy is Federal Rule of Civil Procedure 26(b)(1), which provides:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

FED.R.CIV.P. 26(b)(1). Thus, the general rule is that litigants are entitled to discover information that "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* It should be noted, however, that discovery does have its boundaries and limitations. As the rule implies, any information that is privileged can be withheld from discovery.

The SGR Defendants assert that the documents sought in this case are crucial to their defense because they may contain relevant information as to the issues of causation and apportionment of damages between the various parties against whom the Plaintiff has sought damages. Under this theory, the SGR Defendants argue that the documents prepared by the Plaintiff and submitted to the mediator contain the Plaintiff's "official" position as to the parties responsible for causing RDM's financial demise and the amount of damages caused by each party. The Court agrees that information pertaining to the damages sustained by RDM and their cause would be relevant to the issues in the SGR Defendants' case. However, the Plaintiff, Andersen and GE argue that the Court should protect the materials from discovery because they are protected by a mediation privilege, they constitute work product, and they contain statements made during a settlement negotiation, which are

---

**2.** Because the Court finds that the consent protective orders pertain to documents that would be protected from disclosure under the reasoning of this Order and that the terms of the consent protective orders are consistent with this opinion, the Court will sign and enter the orders.

likely to be inadmissible at trial under Federal Rule of Evidence 408.

## II. *Waiver of Objections for Failure to Respond*

■ As a preliminary matter, the SGR Defendants insist that the Plaintiff has waived any claim to privilege or the work-product doctrine to which he may have otherwise been entitled because he failed to timely respond to the SGR Defendants' requests for production and motion to compel. Rule 34 controls the production of documents during discovery. Under Rule 34, any "party may serve on any other party a request ... to produce and permit the party making the request ... to inspect and copy, any designated documents." FED.R.CIV.P. 34.

> The party upon whom the request is served shall serve a written response within 30 days after the service of the request. A shorter or longer time may be directed by the court or, in the absence of such an order, agreed to in writing by the parties, subject to Rule 29. The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated. If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts. The party submitting the request may move for an order under Rule 37(a) with respect to any objection to or other failure to respond to the request or any part thereof, or any failure to permit inspection as requested.

FED.R.CIV.P. 34(b).

In this case, the SGR Defendants served a request for production of documents on the Plaintiff in the main bankruptcy case of RDM (relating to the Motion to Settle Claim with Andersen) on August 10, 2001. They also served two almost identical requests on the Plaintiff in this proceeding on August 10, 2001 (Third Request) and August 31, 2001 (Fourth Request). The SGR Defendants claim that the Plaintiff did not serve his written response in this adversary proceeding until September 27, 2001, 22 days after the response to the Third Request was due.[3] Therefore, the SGR Defendants argue that the Plaintiff's failure to respond to a request within thirty days is a waiver of any objections, including one of privilege. *See In re United States,* 864 F.2d 1153 (5th Cir.1989) (agreeing that the general rule is that failure to respond results in a waiver, but finding no waiver where production of the documents sought would violate federal law); *Davis v. Fendler,* 650 F.2d 1154 (9th Cir.1981) (finding a waiver where the party refused to respond to interrogatories, or to even specify to the court which information was covered and by which privilege, and asserted the Fifth amendment privilege 15 months after the interrogatories were propounded); *Coker v. Duke & Co.,* 177 F.R.D. 682 (M.D.Ala.1998) (stating the general rule that failure to file a written response constitutes a waiver of any objection, but finding no waiver where the party had not ignored the request, had produced some of the documents, and had told the party seeking discovery that others would not be produced). Additionally, the Plaintiff filed his response to the instant motion on October 26, 2001, which was seven days late.

The Plaintiff notes that his counsel sent a letter to the SGR Defendants' counsel,

---

**3.** The Court assumes that, since the Third and Fourth Requests were essentially identical, the response filed on September 27 could be considered to be a response to both requests and would, therefore, be a timely response to the Fourth Request.

dated September 5, 2001, five days prior to the deadline for serving a response to the Third Request. The letter summarized a meeting that occurred between counsel for the parties and recounted the Plaintiff's counsel's objection that the answers to interrogatories requested would invade the work-product doctrine and attorney-client privilege. The letter also offered to provide the documents requested (the Plaintiff's submissions to the mediator) if certain conditions were agreed to, one of which was an assurance by the SGR Defendants that they would not treat the disclosure as a waiver of these privileges. The Plaintiff also explains that his counsel spoke with counsel for the SGR Defendants on September 6, 2001 at the Plaintiff's deposition, at which time counsel raised the objection of privilege.

Rule 34, unlike Rule 33, which deals with interrogatories, does not specify that a failure to respond within the time provided will result in a waiver of any objections. *Compare* FED.R.CIV.P. 34(b), *with* FED.R.CIV.P. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown."). Rule 37(d) provides that "[i]f a party ... fails ... to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule." FED.R.CIV.P. 37(d). To address a failure to respond to a request for documents, a court may, pursuant to the available sanctions referenced by Rule 37(d), order that the matters contained in the withheld documents be taken to be established; refuse to allow the nonresponsive party to support or oppose claims or defenses related to the withheld

documents; strike the nonresponsive party's pleadings in whole or in part; stay the proceedings until the documents are turned over; or either dismiss the action or render judgment against the nonresponsive party. FED.R.CIV.P. 37(d); (b)(2)(A); (b)(2)(B), (b)(2)(C). Furthermore, Rule 37 states that the "failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has a pending motion for a protective order as provided by Rule 26(c)." FED.R.CIV.P. 37(d).

■ However, it has been noted that "waiver of privilege is the most extreme sanction that a court can impose for failure to follow required procedure," and courts should reserve it for cases of unjustifiable delay, inexcusable conduct, and bad faith in responding to discovery requests. MOORE'S FED.PRAC. AND P. § 26.90[1]; *see also In re Andover Togs, Inc.,* 231 B.R. 521 (Bankr.S.D.N.Y.1999) (" 'To the extent feasible, sanctions should be tailored to fit the circumstances in which the disobedience occurs.' "). In *Smith v. MCI Telecommunications,* the court held that a magistrate judge should have considered the merits of a party's objection to a document request, despite the party's failure to timely respond, because "the interests embodied in the work product doctrine and the attorney-client privilege are paramount." 124 F.R.D. 665, 686–87 (D.Kan. 1989). Similarly, in *First Sav. Bank v. First Bank System, Inc.,* the court explained that the rule on waiver of a privilege is generally that, while the "failure to object to a discovery request in a timely fashion may constitute a waiver of the objection .... it is within the Court's discretion not to compel discovery which is patently improper." 902 F.Supp. 1356, 1361 (D.Kan.1995) (citations omitted). The court also noted that, while a waiver is

often imposed as an appropriate sanction for those objections that "relate solely to the relevance or burdensomeness of the discovery requests .... [courts]" "have been more circumspect in finding a waiver of a privilege objection." *Id.* (citations omitted); *see also Godsey v. United States,* 133 F.R.D. 111, 113 (S.D.Miss.1990) ("This Court notes that an Order of complete compliance with discovery sought would be within its power ...; [h]owever, it is of the opinion that the more advisable and prudent course is to sanction the plaintiff's attorneys and to order that the U.S. Magistrate examine the discovery sought to see if it is relevant or 'otherwise patently improper.' ").

 While the Plaintiff's counsel's letter and his discussions with opposing counsel may not have constituted a sufficient response to the SGR Defendants' requests, the Court finds that the letter, the discussions, and the pleadings filed and the hearing held on the Plaintiff's motion to settle with Andersen clearly put the SGR Defendants on notice that the Plaintiff was objecting to the disclosure of

these documents on the basis of the asserted privileges. The Court does not believe that the failure of the Plaintiff to more formally assert these privileges or to respond timely to the Motion to Compel has seriously prejudiced the SGR Defendants.[4] A finding of a waiver in this situation appears to the Court to be too severe a sanction for the Plaintiff's late responses, and the Court prefers to address the issue of the asserted privileges on the merits.

### III. Are the Documents Privileged?

#### A. Existence and Applicability of a Mediation Privilege

The parties appear to agree that the federal law of privilege applies in this case. *See Hancock v. Hobbs,* 967 F.2d 462 (11th Cir.1992) (holding that the federal law of privilege applies where the court's jurisdiction is premised on a federal question, even if the evidence sought is relevant to pendent state law claims). Therefore, any state law mediation privileges are not applicable to the instant controversy. In-

---

**4.** The Court can consider the Plaintiff's late-filed response to the Motion to Compel upon a finding of excusable neglect. See FED. R.BANKR.P. 9006; *see also* FED.R.CIV.P. 6(b). " '[E]xcusable neglect' is to be determined by reference to a four-factor test: 'the danger of prejudice to the [nonmovant], the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.' " *Advanced Estimating System, Inc. v. Riney,* 130 F.3d 996, 998 (11th Cir. 1997) (citing *Pioneer Inv. Svcs. v. Brunswick Assocs. LP,* 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)); *Cheney v. Anchor Glass Container Corp.,* 71 F.3d 848 (11th Cir. 1996). The Court does not find that one week's delay in filing a response to the SGR Defendant's Motion to Compel either prejudiced the SGR Defendants or impacted the judicial proceedings. The SGR Defendants were already aware of the objections that

would be made by the Plaintiff and would have gone forward with the requested oral arguments, in any event, had the response been timely. Additionally, the late response did not affect these proceedings. This case was not close to being ready for trial and, in fact, discovery continues at this time. Furthermore, the late response did not delay the Court's disposition of the motion. While the Plaintiff has not specifically explained the reason for the delay, the Court concludes that the Plaintiff has made an effort in this case to provide the SGR Defendants access to all of the records of the Debtors and to work informally to resolve the issues surrounding these particular documents. In the Court's opinion, the Plaintiff's counsel's response was not so untimely as to evince bad faith. Additionally, as the Court prefers to resolve issues on their merits, rather than on a procedural point, the Court will consider the Plaintiff's response.

stead, the Court must look to Federal Rule of Evidence 501 (hereinafter referred to as "FRE 501"), which provides, in relevant part:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

FED.R. OF EVID. 501.

The Plaintiff urges the Court to adopt a privilege to protect from discovery statements, communications, and documents prepared for or made during mediation. The Plaintiff concedes that neither the Eleventh Circuit Court of Appeals nor any federal district court in the Eleventh Circuit has recognized such a privilege, but asks the Court to consider the reasoning and analysis undertaken by the District Court for the Central District of California and the District Court for the Western District of Pennsylvania in adopting a mediation privilege. *See Folb v. Motion Picture Industry Pension & Health Plans*, 16 F.Supp.2d 1164 (C.D.Cal.1998), *aff'd*, 216 F.3d 1082, 2000 WL 420636 (9th Cir.); *Sheldone v. Pennsylvania Turnpike Comm'n*, 104 F.Supp.2d 511 (W.D.Pa. 2000).

In *Jaffee v. Redmond*, the United States Supreme Court established the framework for analyzing the issue of whether a federal court should recognize an evidentiary privilege pursuant to FRE 501. *Jaffee v. Redmond*, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). In recognizing a federal psychotherapist-patient privilege, the Court noted that Rule 501 "did not freeze the law governing privileges of witnesses

in federal trials ..., but rather directed federal courts to 'continue the evolutionary development of testimonial privileges.'" *Id.* at 9, 116 S.Ct. 1923 (quoting *Trammel v. United States*, 445 U.S. 40, 47, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980)). Furthermore, the legislative intent of Congress directs federal courts to determine the recognition of privileges on a case-by-case basis. *Id.* at 8, 9 n. 7, 116 S.Ct. 1923 (citing S.Rep. No. 93–1277 at 13 (1974), U.S.Code Cong. & Admin.News 1974, 7051, 7059–60) (noting that Congress specifically rejected proposed Rules 501–513, which would have established specific federal privileges).

In conducting its analysis, the Court began with the "fundamental maxim" that the public is entitled to "every man's evidence." *Id.* at 9, 116 S.Ct. 1923 (internal citations omitted). While federal courts generally disfavor testimonial privileges, exceptions may be justified when the public policy supporting a privilege outweighs the need to ascertain the truth. *Id.* In balancing this public policy against the desire to provide the parties with access to all available evidence, the Court considered several factors.

First, the Court determined that a psychotherapist privilege would serve the important public purpose of encouraging individuals with mental health problems to seek treatment. Second, the Court considered the evidentiary benefit that would likely result from refusing to apply the privilege. Because rejection of the privilege would chill confidential communications between therapists and their patients, the Court concluded that "much of the desirable evidence ... is unlikely to come into being"; and therefore, the resulting evidentiary benefit would be "modest." *Id.* at 11–12, 116 S.Ct. 1923. Third, the Court noted that all fifty states had adopted the privilege, which indicated that

"reason and experience," within the meaning of FRE 501, supported the recognition of the privilege, and reasoned that the failure to apply a federal psychotherapist privilege would frustrate the purpose of the state legislatures in enacting a state privilege. Finally, the Court appeared to be persuaded to recognize a new federal privilege by the fact that the Judicial Advisory Committee on Rules of Evidence had proposed that Congress enact a statutory psychotherapist privilege. *Id.; see e.g., United States v. Gillock,* 445 U.S. 360, 367–68, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980) (declining to recognize a legislative privilege, in part, because the Advisory Committee failed to include such a privilege in its draft of proposed privileges).[5]

In *Folb v. Motion Picture Industry Pension and Health Plans,* the court employed the reasoning and analysis used by the Supreme Court in *Jaffee* to determine whether federal courts should recognize a mediation privilege. *Folb,* 16 F.Supp.2d 1164 (C.D.Cal.1998). In that case, the plaintiff alleged that the defendant improperly discharged him in retaliation for his whistle-blowing activities. While employed by the defendant, the plaintiff was accused by a subordinate of sexual harassment. The plaintiff contended that the defendant had used the complaint as a pretext to discharge him. In an attempt to settle the subordinate's claims against it, which arose out of the alleged sexual harassment, the defendant engaged in mediation with the subordinate. The mediation was entered by both parties on the condition that the mediation and all statements made therein would remain confidential. The plaintiff sought discovery of correspondence between the counsel for the subordinate and the defendant, file notes prepared by the subordinate's counsel regarding settlement communications, and a mediation brief prepared for the mediation. *Id.* at 1166–67.

When the defendant's counsel refused to turn over the brief, the plaintiff moved the court to compel disclosure. In response, the defendant claimed that the brief was privileged. The plaintiff argued that the documents were relevant to his claim because he believed that they would evidence an inconsistent position taken during the mediation, as opposed to that taken in the lawsuit at issue. The plaintiff speculated that the defendant would argue that it properly terminated the plaintiff because of the sexual harassment allegations, despite the fact that it may have argued during the mediation that the subordinate was never sexually harassed by the plaintiff. *Id.* at 1167.

In determining whether a federal mediation privilege should protect the documents, the court applied the same factors considered by the Supreme Court in *Jaffee:* "(1) whether the asserted privilege is 'rooted in the imperative need for confidence and trust'; (2) whether the privilege would serve public ends; (3) whether the evidentiary detriment caused by the exercise of the privilege is modest; and (4) whether the denial of the federal privilege would frustrate a parallel privilege adopted by the states." *Id.* at 1171 (citing *Jaffee,* 518 U.S. at 9–13, 116 S.Ct. 1923).

As to the first factor, the court noted that, without recognition of a federal mediation privilege, information exchanged during a confidential mediation would be subject to liberal discovery. The court then considered the question of whether a mediation privilege would truly achieve the recognized federal policy of encouraging parties to attend mediation, as an alternative

---

**5.** The specific privileges proposed by the Advisory Committee did not include a mediation privilege. *See* FED.R.EVID. 501 Advisory Committee Notes.

to full-blown litigation, and to communicate openly and honestly in a manner that would facilitate settlement. After reviewing the academic literature on the subject, as well as several cases discussing the importance of confidential communications, the court concluded that the need for confidentiality and trust between participants in a mediation is "sufficiently imperative to necessitate the creation of some form of privilege." *Id.* at 1175 ("rules protecting the confidentiality of mediation proceedings" encourage parties to "attend mediation and communicate openly and honestly in order to facilitate successful alternative dispute resolution"). This conclusion was further supported by the fact that many federal district courts rely on alternative dispute resolution to reduce their case loads and often require parties to attempt to settle their claims through some form of ADR, including mediation. *Id.* (also noting that many of the district court's local rules regarding ADR prohibit the disclosure of confidential dispute resolution communications). The court essentially relied on the fact that "[t]he proliferation of federal district court rules purporting to protect the confidentiality of mediation and the ADR Bill now pending before the United States Senate indicate a commitment to encouraging confidential mediation as an alternative means of resolving disputes that would otherwise result in protracted litigation." *Id.* at 1174. The court also noted that the absence of a rule protecting mediation communications gives parties an incentive to withhold sensitive information during the mediation session or to refuse to participate. *Id.* at 1172.

Second, the court stated that the "proposed blanket mediation privilege would serve public ends by encouraging prompt, consensual resolution of disputes, minimizing the social and individual costs of litigation, and markedly reducing the size of state and federal court dockets." *Id.* at

1176. Therefore, the public end served by the proposed privilege was similar to that served by the recognition of an attorney-client privilege—"the benefit to the administration of justice." *Id.* at 1177. The court reasoned that:

> A privilege that promotes conciliatory dispute resolution and alleviates the press of cases on the formal judicial system also allows the courts to devote those limited resources to fairly adjudicating those cases that do result in protracted litigation. Rather than the hasty judgments born of overcrowded dockets, the courts are able to provide more carefully considered decisions in matters of sufficient public concern that the parties submit their disputes to a court of law, having found it too difficult to reach a mutually agreeable settlement. Idealism aside, a mediation privilege would serve important public ends by promoting conciliatory relationships among parties to a dispute, by reducing litigation costs and by decreasing the size of state and federal court dockets, thereby increasing the quality of justice in those cases that do not settle voluntarily.

*Id.*

As to the third *Jaffee* factor, the court concluded that the evidentiary detriment associated with withholding documents prepared solely for the purpose of presenting a party's case to the mediator and the opponent would be modest because, absent the mediation, the information would not have come into being. *Id.* at 1178. The court explained that evidence, otherwise discoverable, that is presented to the mediator would continue to be accessible, even if a blanket mediation privilege applied. Addressing the concern that a blanket privilege would allow a party to "take inconsistent positions in related litigation," the court noted that "evidence of that in-

consistent position only comes into being as a result of the party's willingness to attend mediation" and "[a]bsent a privilege protecting the confidentiality of mediation, the inconsistent position would presumably never come to light." *Id.*

Finally, the court addressed the fourth factor—whether the privilege is supported by "reason and experience," within the meaning of FRE 501. The court considered the fact that a consistent body of state legislatures and courts had enacted or recognized some form of mediation privilege, and concluded that this was a good indicator that reason and experience supported the recognition of a federal mediation privilege. *Id.* The court noted that not every state agreed as to the scope of the privilege—whether it protects the entire process or merely the communications made to the mediator—but noted that this fact "should not prevent the federal courts from determining that in light of reason and experience we should adopt a federal mediation privilege" and concluded that the " '[d]enial of the federal privilege ... would frustrate the purposes of the state legislation that was enacted to foster these confidential communications.' " *Id.* at 1179 (quoting *Jaffee,* 518 U.S. at 13, 116 S.Ct. 1923). After considering all of the factors outlined in *Jaffee,* the court recognized the existence of a federal mediation privilege. *Id.*

Similarly, in *Sheldone v. Pennsylvania Turnpike Comm'n,* the court followed the reasoning of the *Folb* decision and agreed that "[e]ach of [the *Jaffee*] factors weigh in favor of recognizing the mediation privilege in this case." 104 F.Supp.2d 511 (W.D.Pa.2000). In *Sheldone,* the plaintiff employees filed a lawsuit against their employer for violations of the Fair Labor Standards Act. The plaintiffs sought production of documents generated during the mediation of grievances filed by other employees. The documents were sought es-sentially because the plaintiffs believed that they contained admissions that the defendant settled out of court because it realized that it had illegally paid the employees "straight time." The defendant asserted that the documents were privileged and urged the court to recognize a federal mediation privilege.

The court addressed each of the four *Jaffee* factors. First, as did the *Folb* court, the court recognized that "it is beyond doubt that the mediation privilege is rooted in the imperative need for confidence and trust." *Id.* at 514. Second, the court found that a lack of confidentiality would likely result in a reduction of those parties willing to participate in mediation and, for those who did agree to participate, the effectiveness of mediation would be adversely affected by the lack of confidentiality. Therefore, the public interest in encouraging settlements and preserving judicial resources supported the recognition of a mediation privilege. *Id.* Third, the court agreed with the *Folb* court's assessment that the evidentiary detriment would be modest, given the fact that the information would not exist, but for the mediation. *Id.* at 515 ("This Court sees no reasoned basis for allowing the Plaintiffs to enjoy the benefit of an alleged admission arising through the mediation process when it seems doubtful that such an admission would have otherwise come into existence."). Finally, the court noted that "the nearly unanimous voices of state legislatures from across the country adopting mediation privileges" supports recognition of the privilege, as does the fact that failure to recognize a federal mediation privilege would frustrate the public policy objectives of those states that have recognized such a privilege. *Id.* ("The states' 'promise[s] of confidentiality' regarding mediation 'would have little value if the [participants] were aware that the privilege would not be honored in ... federal court.' ").

This Court agrees with the reasoning and analysis put forth by these district courts.[6] While it is impossible to know for certain whether the existence of a mediation privilege actually encourages settlements, the Court is persuaded that it does. Even a commentator who questioned whether confidentiality is essential to the process of ADR and settlements has acknowledged that "mediation has flourished," most likely because the parties were assured that the information would remain confidential, that attempts to use the information provided during a mediation in a subsequent litigation are rare, and that a court would probably exclude the information from trial, pursuant to Federal Rule of Evidence 408. Eric Green, *A Heretical View of the Mediation Privilege*, 2 Ohio St.J. on Disp.Resol. 1, 32, (1986).

It would appear that, regardless of whether the confidentiality afforded to these communications arises in the form of a privilege or merely a prohibition on voluntary disclosure, the evidence is strong that parties engage in mediation with an expectation that the information will remain protected from future use by other parties. Therefore, it seems logical to assume that once this expectation is removed, the willingness of those parties (or more accurately their counsel) to engage in mediation, with full knowledge that the information will not be protected from disclosure in the event of future federal litigation, would decrease.

Furthermore, in the type of mediation at issue here, the parties are given essentially two options: 1) provide a thorough analysis of the strengths and weaknesses of your case to the mediator, or 2) do not participate in the mediation. If the parties feel that this type of self analysis is detrimental to their cases and that the information will be available to be used against them in a later litigation, they will most likely either lie to the mediator or choose not to go forward with the mediation. Either way, neither the mediation process nor judicial efficiency are served. It is axiomatic that parties, especially those to complex litigation, should be encouraged to utilize alternative methods of dispute resolution. Accordingly, it makes little sense to place the costs of doing so—the requirement that they make communications and generate documents that would not otherwise come into existence—so high as to discourage their participation.

Having concluded that the federal mediation privilege should be recognized, the Court must determine the scope of that privilege and its applicability to the Media-

---

**6.** The Court acknowledges that the Eleventh Circuit Court of Appeals has stated that "the rule in this circuit is that a new privilege should only be recognized where there is a 'compelling justification.'" *International Horizons, Inc. v. The Committee of Unsecured Creditors (In the Matter of International Horizons, Inc.)*, 689 F.2d 996, 1004 (11th Cir. 1982) (quoting *In re Dinnan*, 661 F.2d 426 (5th Cir.1981)). According to the court, this rule arises from the federal courts' disfavor of privileges and from the policy of construing privileges narrowly, so as to protect the "search for truth." *Id.* at 1003 (quoting *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)). In *International Horizons*, the Eleventh Circuit affirmed this Court's decision not to recognize a federal accountant-client privilege. *See In the Matter of International Horizons*, 14 B.R. 199 (Bankr.N.D.Ga.1981). The Court based its decision not to recognize such a privilege on the fact that allowing a debtor to hide its financial condition and transactions under the cloak of an accountant-client privilege would have a significant negative impact on the bankruptcy courts' ability to administer the debtor's estate. No such concern exists in recognizing the privilege at issue here. Furthermore, the encouragement of settlement negotiations and alternative dispute resolution is a compelling interest sufficient to justify recognition of a mediation privilege.

tion Documents. The *Sheldone* court chose to shape the contours of its mediation privilege after the rules associated with the district court's court-ordered mediations. *Sheldone*, 104 F.Supp.2d at 517. These rules provided that "all written and oral communications made in connection with or during" a mediation conducted before a "neutral" mediator would be protected from disclosure or use "for any purpose (including impeachment) in the civil action or in any other proceedings." *Id.* Additionally, the court held that the "mediation privilege does not protect from disclosure 'any evidence otherwise' and independently 'discoverable merely because it [wa]s presented in the course of' the Mediation." *Id.* (accord FED.R.EVID. 408).

█ The Court finds that the scope of the privilege announced in the *Sheldone* decision comports with the policies of protecting confidential communications in order to encourage settlement without severely limiting the ability of parties to access relevant information. The mediation privilege should operate to protect only those communications made to the mediator, between the parties during the mediation, or in preparation for the mediation. Therefore, the mediation privilege does not apply to shelter from disclosure documents prepared prior to the mediation, merely because those documents were presented to the mediator during the course of the mediation.

█ Here, the privilege applies to the documents found under Tab B–2 because they are copies of slides prepared for and possibly used during the mediation. As to the Tab C documents, the mediation privilege applies only to the memorandum of law prepared by the Plaintiff's counsel and presented to the mediator.[7] As to the Tab B–1 documents, all memoranda prepared by the Plaintiff's counsel and submitted to Andersen or the mediator and all correspondence between the parties (during the mediation) or the mediator will be protected. Because the documents under Tab A were prepared well in advance of the mediation, they are not protected by the mediation privilege. However, the Court will consider whether the letter written by Plaintiff's counsel to Andersen's counsel in an attempt to settle the Plaintiff's claim against Andersen is otherwise protected.

## B. *Application of the Work–Product Doctrine*

█ The work-product doctrine protects parties from "unwarranted inqui-

---

7. The Court notes that among the Tab C documents are also four expert witness reports prepared on behalf of the Plaintiff in the GE litigation. The voluntary disclosure of these reports appears to be prohibited by a confidentiality order imposed by the U.S. District Court in the GE litigation, which provides that the documents may be disclosed upon the lawful order of another court. The Court finds that the scope of the mediation privilege does not extend to protect these reports, because they were prepared well in advance of the mediation and were not prepared for the purpose of the mediation. However, assuming these expert witnesses are non-testifying experts, these reports are most likely not discoverable, pursuant to Rule 26(b)(4)(B), which protects from disclosure during pre-trial discovery of the facts found or opinions formulated by an opponent's nontestifying experts, except "upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." FED.R.CIV.P. 26(b)(4)(B); *Durflinger v. Artiles*, 727 F.2d 888 (10th Cir.1984); *see also Shipes v. BIC*, 154 F.R.D. 301, 308–09 ("Rule 26(b)(4)(B) uses the phrase 'in anticipation of litigation.' The court interprets Rule 26(b)(4)(B) to apply to facts known and opinions held by an expert who was retained by a party in anticipation of any litigation"). The Court is not prepared to rule conclusively on this issue because the SGR Defendants have not had an opportunity to address it.

ries into the files and the mental impressions of an attorney." *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Under Federal Rule of Civil Procedure 26(b), "a party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." FED.R.CIV.P. 26(b)(3). However, the Court is instructed to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.*

■■■■ The Court makes no determination as to whether the settlement letter qualifies as work product. Even assuming the letter was once entitled to the protection of the work-product doctrine, the Plaintiff's counsel waived such protection when he sent the letter to Andersen, the Plaintiff's adversary. Although the "work-product doctrine does not require that a document be kept strictly confidential in order to fall within its protection," disclosure of a document to a third party waives the work-product immunity if it substantially increases "the opportunities for potential adversaries to obtain the informa-

tion." *Burlington Industries, Inc. v. Rossville Yarn, Inc.,* 1997 WL 404319, *2–*3 (N.D.Ga.1997); *see also Resolution Trust Corp. v. Massachusetts Mutual Life Ins. Co.,* 200 F.R.D. 183, 188–89 (W.D.N.Y. 2001) ("Unlike the attorney-client privilege, 'the work-product privilege is not necessarily waived by disclosure to any third party'; rather, 'the courts generally find a waiver of the work product privilege only if the disclosure substantially increases the opportunity for potential adversaries to obtain the information.'"); *In re Circle K Corp.,* 199 B.R. 92, 100 (Bankr. S.D.N.Y.1996) ("The holder of the work product privilege waives it only by voluntarily disclosing it in such a manner that it is likely to be revealed to its adversary."). Given the fact that Andersen was an adversary of the Plaintiff at the time the letter was sent to Andersen's counsel, the Court cannot find that the letter remains protected by the work-product doctrine in this matter.[8]

### C. *Protection of Documents Generated During Settlement Negotiations*

■■■ Federal Rule of Evidence 408 (hereinafter referred to as "FRE 408") provides that "[e]vidence of (1) furnishing or promising to furnish, or (2) accepting or offering to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or the invalidity of the claim or its amount." FED.R.EVID. 408. The rule also excludes from admission

---

8. The Court acknowledges, however, that, absent the voluntary disclosure to opposing counsel, the fact that the Plaintiff prepared the documents in anticipation of one litigation, but now seeks to protect the documents from disclosure in a separate litigation should not prevent the Plaintiff from receiving such protection. "Documents which were produced in anticipation of litigating one case remain protected in a separate case, at least where the cases are closely related." *Shipes v. BIC Corp.,* 154 F.R.D. 301, 305 (M.D.Ga. 1994); *see also The Duplan Corporation v. Moulinage, et al.,* 487 F.2d 480 (4th Cir.1973); *Federal Deposit Insurance Corp. v. Cherry, Bekaert & Holland,* 131 F.R.D. 596 (M.D.Fla. 1990).

"[e]vidence of conduct or statements made in compromise negotiations." *Id.* FRE 408 "does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." *Id.*

 As a threshold matter, the Court notes that FRE 408 does not protect the documents from discovery, but only determines whether the evidence is admissible. *See* FED.R.CIV.P. 26(b)(1). However, "while admissibility and discoverability are not equivalent, it is clear that the object of the inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." *Bottaro v. Hatton Assocs.*, 96 F.R.D. 158, 159 (E.D.N.Y.1982); *see also Vardon Golf Co., Inc. v. BBMG Golf Ltd.*, 156 F.R.D. 641, 650–51 (N.D.Ill.1994) ("an item which would be inadmissible at trial is discoverable if the information sought appears to be reasonably calculated to lead to the discovery of admissible evidence"); *Shipes v. BIC Corp.*, 154 F.R.D. 301, 309 (M.D.Ga.1994). Accordingly, several courts have held that the same public policy concerns that support FRE 408 also support protection from discovery into confidential settlement negotiations. *Allen County, Ohio v. Reilly Indus.*, 197 F.R.D. 352 (N.D.Ohio 2000) (refusing to allow the discovery of correspondence between counsel for settling parties that did not contain statements of witnesses or the parties).

 These courts have focused on the fact that "[a]llowing discovery of negotiations between parties to an ongoing litigation can have a chilling effect on the parties' willingness to enter into settlement negotiations." *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364 (N.D.Ill.2001) (where the plaintiff sued multiple defendants and entered a confidential settlement with one, the court refused to compel disclosure of the documents relating to the settlement agreement; despite the argument that the documents were relevant to the question of liability due to the plaintiff's overlapping claims, the court found that the "negotiations themselves do not impact on the scope of liability and have no probative value"). From this line of cases has evolved the requirement that the party seeking discovery of an inadmissible settlement agreement or related statements make a "particularized showing of a likelihood that admissible evidence will be generated" by the discovery of the information sought. *Bottaro*, 96 F.R.D. at 160; *see also Shipes*, 154 F.R.D. at 309. These cases essentially shift the burden of proof as to the likelihood of producing admissible evidence to the party seeking discovery.

A contrary line of cases has held that the policies behind FRE 408 should have no impact on the discoverability of settlement negotiations. *See Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 1996 WL 71507, at *6 (S.D.N.Y.1996) (finding that FRE 408 places no restriction on the discovery of a completed settlement agreement); *Bennett*, 112 F.R.D. at 139 ("the court firmly rejects the plaintiff's contentions, drawn from *Bottaro v. Hatton Associates* ..., that the movant has the burden of making some 'particularized showing of a likelihood that admissible evidence will be generated by the dissemination of the terms of the settlement agreement' "); *ABF Capital Management v. Askin Capital*, 2000 WL 191698, at *1 (S.D.N.Y.2000). The Court notes, however, that most of the cases that have allowed the disclosure of settlement documents have only been asked to compel production of the settlement agreement itself. *Bank Brussels Lambert*, 1996 WL

71507, at *6 (S.D.N.Y.1996); *Bennett v. La Pere,* 112 F.R.D. 136 (D.R.I.1986).

In *Vardon Golf Co.,* the court followed the *Bottaro* decision to the extent that it required a shifting of the burden, but rejected that portion of the decision that required a "particularized showing." 156 F.R.D. 641, 650–51 (N.D.Ill.1994).

> We believe that the *Bottaro* approach represents the proper course.... To place the burden of proving that the evidence sought is not reasonably calculated to lead to the discovery of admissible evidence on the opponent of discovery is to ask that party to prove a negative. This is an unfair burden, as it would require a party to refute all possible alternative uses of the evidence, possibly including some never imagined by the proponent. We think, however, the *Bottaro* court overstated the nature of the proponent's burden. The Federal Rules of Civil Procedure do not speak to a "particularized showing," but to what is "reasonably calculated to lead to the discovery of admissible evidence." Therefore, we hold that where information sought in discovery would not be admissible due to an exclusionary rule in the Federal Rules of Evidence, the proponent of discovery may obtain discovery (1) by showing that the evidence is admissible for another purpose other than that barred by the Federal Rules of Evidence or (2) by articulating a plausible chain of inferences showing how discovery of the item sought would lead to other admissible evidence. The proponent may do this by simply articulating what kind of information it reasonably expects to find in the documents sought and how this will lead to other admissible evidence. The proponent need not show that the information expected is in fact in the items sought, but need only articulate why it is reasonable to believe that information of that nature would be revealed were discovery permitted.

*Id.* at 651.

This Court agrees with the reasoning of those cases that shift the burden to the party seeking discovery when the information sought would be excluded by the Federal Rules of Evidence. In keeping with the court's decision in *Vardon Golf,* this Court will require the SGR Defendants to establish that the information contained in the settlement letter is either admissible for a purpose other than that barred by FRE 408, or to articulate a plausible chain of inferences showing how discovery of the item sought would lead to other admissible evidence.

■ First, the SGR Defendants contend that the information contained in the settlement letter would be admissible at trial for the purpose of impeaching the Plaintiff. The Court disagrees. As noted above, FRE 408 excludes "[e]vidence of conduct or statements made in compromise negotiations" for the purpose of proving liability for or the invalidity of the claim or its amount. The Court notes that the SGR Defendants have argued that the settlement letter and the mediation documents are relevant to both the elements of causation and damages in this case, because they contain the Plaintiff's official position as to how much of the damages sustained by the Debtors the Plaintiff attributes to Andersen. If presented by the SGR Defendants in their case-in-chief, this information would be offered in order to disprove liability (causation) or to prove the true amount of the Plaintiff's claim against the SGR Defendants (apportionment of damages), and would therefore fall squarely within the exclusion provided by FRE 408. Therefore, the question is, would the SGR Defendants be allowed to present this same information for a pur-

pose not prohibited by FRE 408, such as impeachment or proving bias. In this case, the contents of the settlement letter would probably be inadmissible for impeachment purposes or to show bias.

In *Davis v. Rowe*, the court held that a letter written by the defendant in furtherance of a settlement could not be used to impeach the defendant or to illustrate his bias in related litigation. *Davis v. Rowe*, 1993 WL 34867 (N.D.Ill.1993). The defendant had placed the plaintiff's property for sale in his gallery on a consignment basis. The property was destroyed in a fire, and the defendant filed a claim against his insurer. The insurer contested payment, and the defendant sent a letter to the insurer detailing the claim, in which he stated that the plaintiff's property was worth more than $4 million. The defendant and the insurer eventually settled the claim, but the plaintiff sued the defendant for his failure to turn over to her a portion of the proceeds. The plaintiff sought to admit the letter as evidence to refute the defendant's claim that the property was worth far less than $4 million. The court held that FRE 408 rendered the letter inadmissible. The plaintiff argued that the letter was admissible for the nonprohibited purpose of establishing the defendant's bias. The court granted the defendant's motion in limine, finding that, as a party to the matter, the defendant's bias would be assumed by the jury; and, therefore, the plaintiff need not introduce evidence to establish his bias. Additionally, the court stated that the plaintiff "may not use the statements to impeach" the defendant because "[i]nconsistent conduct or statements made in connection with compromise negotiations may not be used for impeachment purposes." *Id.* at *5; *see also EEOC v. Gear Petroleum, Inc.*, 948 F.2d 1542 (10th Cir.1991) (noting that the general rule is that courts should not admit inconsistent statements made during the course of a compromise negotiation for the purpose of impeachment); *Schlossman & Gunkelman, Inc. v. Tallman*, 593 N.W.2d 374 (N.D.1999) ("When the witness sought to be impeached is also a litigant, the admissibility of statements made during settlement negotiations increases the risk a jury may use the evidence substantively as an admission of liability.").

Here, if evidence presented by the Plaintiff at trial were different from that contained in the settlement letter, the settlement letter would be an inconsistent statement made by the Plaintiff during a settlement negotiation. It is highly likely that the letter would not be admissible for impeachment or any other nonprohibited purpose. Accordingly, the Court finds that the SGR Defendants have failed to establish that the settlement letter would be admissible under an exception to FRE 408. Similarly, the Court is not persuaded that the settlement letter is likely to lead the SGR Defendants to additional admissible evidence to which they have not already been given access. The Plaintiff has assured the Court that the SGR Defendants have been given free access to all of the Debtors' records, as well as to the Andersen work papers. Therefore, the Court finds that the settlement letter is protected from disclosure.

## IV. *Waiver*

Finally, the Court must determine whether the Plaintiff has waived either the mediation privilege or his right to withhold the settlement letter from disclosure.

### A. *Disclosure of the Tab A Documents*

The SGR Defendants have asserted that the Plaintiff waived all privileges by disclosing the Tab A documents to the SGR

Defendants. The Plaintiff has conceded that the Tab A documents, primarily consisting of the settlement letter, were provided to the SGR Defendants, but maintains that the disclosure was inadvertent. However, the SGR Defendants have informed the Court by letter that Andersen's response to the settlement letter (and possibly the settlement letter itself, as an attached exhibit) was marked and offered as an exhibit during the deposition of an Andersen employee, Amelia Anne Ripepi, which occurred on November 15, 2001. *See* Letter from Rebecca Lamberth to the Court, dated February 20, 2002. Therefore, the SGR Defendants argue that the disclosure was not inadvertent. From the deposition transcript, it appears that counsel for both Andersen and Plaintiff were present at this deposition and cross examined the deponent.

 A privilege may be waived by the disclosure of privileged documents. *Lazar v. Mauney*, 192 F.R.D. 324 (N.D.Ga. 2000). "[T]he prevailing view in courts of this circuit—and other circuits as well—is that a waiver can be found only after performing a balancing test that assesses the [party's] conduct in inadvertently releasing the information, the sensitivity of the information, and the ... need for the information." *In re Polypropylene Carpet Antitrust Litigation*, 181 F.R.D. 680 (N.D.Ga.1998) (citing *Briggs & Stratton Corp. v. Concrete Sales & Servs.*, 176 F.R.D. 695, 699–700 (M.D.Ga.1997)). *But see Bellsouth Adver. & Publ'g Corp. v. American Business Lists, Inc.*, 1992 WL 338392, at *8 (N.D.Ga.1992) (inadvertent disclosure of documents constitutes a *per se* waiver of the attorney-client privilege). To determine whether the privilege has been waived, courts consider: "the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; ...

the number of inadvertent disclosures; ... the extent of the disclosure; ... the delay and measures taken to rectify the disclosures; and ... whether the overriding interests of justice would be served by relieving a party of its error." *Briggs & Stratton*, 176 F.R.D. at 699–700; *see also U.S. v. Pepper's Steel & Alloys, Inc.*, 742 F.Supp. 641, 645 (S.D.Fla.1990).

It appears to the Court that the Tab A documents may have initially been unknowingly produced, as the Plaintiff contended during the hearing on this motion, among several boxes of non-privileged documents. However, the information provided by the SGR Defendants suggests that the same documents were also deliberately disclosed during the Ripepi deposition. Given these facts, the Court cannot find that the disclosure was inadvertent. Even if the Court could found that the disclosure was inadvertent, the Plaintiff has presented no evidence that his counsel took reasonable precautions to prevent either the initial disclosure or the use of these documents as an exhibit during the deposition. Additionally, the Court notes that several factors weigh in favor of finding a waiver. The first is that, since the documents have already been reviewed by the SGR Defendants, ordering the SGR Defendants to return the documents would not preserve their confidentiality as to the SGR Defendants. Second, as noted above, it is highly likely that the documents are inadmissible for any purpose, and therefore, will not be used as evidence in this case. Accordingly, the Court finds that the "overriding interests of justice" do not require the Court to order the SGR Defendants to return the Tab A documents. However, to preserve the confidentiality of the documents, the Court will order that the SGR Defendants not disclose the documents to any third party or otherwise make them part of the public record of this case.

Additionally, the Plaintiff has noted that the Tab A documents were prepared well in advance of the mediation and are, therefore, not entitled to the protection of the mediation privilege. Accordingly, the Plaintiff suggests that the disclosure of these documents cannot be deemed to be a waiver of the protection of the mediation privilege. The Court agrees with the Plaintiff. The Tab A documents were prepared at a different time and for a different purpose than were the Mediation Documents, and the disclosure of one set should not be considered to be a waiver of a privilege attached to the other.

### B. *At Issue Waiver*

The SGR Defendants also submit that the Plaintiff has waived the mediation privilege because he has placed the contents of the Mediation Documents "in issue." This type of waiver has been referred to as an "implied waiver" or "at-issue waiver." An implied waiver may be found when the holder of the privilege "asserts a claim that in fairness requires examination of protected communication." *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir.1991). Fairness considerations arise when a party to the litigation "attempts to use the privilege both as a shield and a sword," or, in other words, "partially disclose[s] privileged communications or affirmatively rel[ies] on privileged communications to support its claim or defense and then shield[s] the underlying communications from scrutiny by the opposing party." *United States v. John Doe (In re Grand Jury Proceedings)*, 219 F.3d 175 (2d Cir.2000); *GAB Business Services, Inc. v. Syndicate 627*, 809 F.2d 755 (11th Cir.1987). For example, an implied waiver has been found when a party asserts, as a defense, that he relied upon the advice of his counsel, but continues to claim the attorney-client privilege to exclude any unfavorable testimony of his attorney. *See*

*In re Grand Jury Proceedings*, 219 F.3d at 182–83 (citing *In re Kidder Peabody Secs. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y.1996)). However, "merely asserting a defense or claim" is not sufficient, "without more, to waive a privilege." *Beneficial Franchise Co. v. Bank One, N.A.*, 205 F.R.D. 212, 216 (N.D.Ill.2001).

The SGR Defendants heavily rely upon the court's opinion in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D.Wash.1975), for the proposition that an implied waiver should be found whenever "the party asserting the privilege placed information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would have been manifestly unfair to the opposing party." *Hearn*, 68 F.R.D. at 581. At first blush, the instant situation might appear to satisfy the elements of implied waiver as established by the *Hearn* court. However, the *Hearn* case is distinguishable from the instant case. In *Hearn*, the court held that, in a suit brought by an inmate against a state agency for violations of his constitutional rights, the state agency waived its right to claim an attorney-client privilege by asserting the affirmative defense of good faith. *Id.* at 583. The good faith defense essentially required a finding that the state agency was entitled to immunity from prosecution because it had relied in good faith upon the advice of its attorney. Therefore, the "defendant's [sic] communications with their attorney [were] inextricably merged with the elements of the plaintiff's case and defendants' affirmative defense." *Id.* at 582. The court noted, however, that "[i]n an ordinary case the obstruction [of the truth] is not likely to be great, for attorney-client communications are usually incidental to the lawsuit, and other means of proof are normally available." *Id.*

The Court is of the opinion that the doctrine of implied waiver cannot appropriately be applied to this case. Here, the Plaintiff has not used his counsel's legal analyses, which are recorded in the Mediation Documents, as a sword against the SGR Defendants. The Plaintiff has simply sued the SGR Defendants, alleging that they are liable for damages arising from the "deepening insolvency" of RDM. He has also sought compensation from other defendants and contends that all defendants are jointly and severally liable for these damages. The Plaintiff has investigated raw data, such as Andersen's work papers and the business records of RDM, to which the SGR Defendants have had full access, to build his case against all parties. The true evidence of RDM's damages and the proper apportionment is to be found in the business records of the company. Presumably, the Plaintiff will present these sources of information and their associated facts as evidence against the SGR Defendants at trial and will not contend that this evidence is privileged. Counsel's opinion of how the law, which is known to all parties, should be applied to the facts, which are also known to all parties, should not be considered to be a separate source of information or evidence that has been "used as a sword" against the SGR Defendants.

Furthermore, the Court does not agree that, by merely alleging a claim against Andersen and initiating a similar lawsuit against the SGR Defendants, the Plaintiff has placed the contents of the Mediation Documents "in issue" and, that by doing so, waived any privilege that might otherwise protect the documents from disclosure. If the Court were to find otherwise, it is conceivable that an attorney's work product, including internal legal memoranda, would often be subject to disclosure under the implied waiver theory. *See, e.g., Beneficial Franchise Co.,* 205 F.R.D. at 217 ("Such a rule would exact too stiff a price for the assertion of commonly-pled claims and defenses.").[9] Accordingly, the Court finds that the Plaintiff has not waived the mediation privilege.

## CONCLUSION

For the reasons set forth above, the SGR Defendants' Motion to Compel is **DENIED** in part and **GRANTED** in part, as follows:

A federal mediation privilege applies to the documents found under Tab B–2 (the slides) and the Mediation Briefs found under Tab C and Tab B–1. Accordingly, as to these documents, the SGR Defendants' Motion to Compel is hereby **DENIED**.

The Plaintiff has waived his right to withhold the Tab A documents by voluntarily disclosing the documents to the SGR Defendants. Accordingly, with respect to these documents, the SGR Defendants' Motion to Compel is hereby **GRANTED**. The SGR Defendants will be allowed to retain the Tab A documents, but are hereby **ORDERED** not to disclose the documents to a third party or otherwise make the documents part of the public record of this case.

As to any other documents not specifically commented upon herein, to which the SGR Defendants have not had access, the Court finds no basis to allow the Plaintiff to withhold the documents and directs the Plaintiff to disclose said documents.

**IT IS SO ORDERED.**

---

9. For similar reasons, the Court also rejects the SGR Defendants' contention that the documents should be disclosed despite the privilege on the ground that the SGR Defendants have demonstrated an extraordinary need for the documents.